# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3096

_____

Jonathan Dorris

*Plaintiff - Appellant*

v.

TXD Services, LP

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: September 24, 2013
Filed: February 27, 2014

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Jonathan Dorris, a member of the Arkansas Army National Guard, appeals the district court's grant of summary judgment dismissing his claim that TXD Services ("TXD") violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 et seq., when it terminated Dorris while he was deployed on active duty in Iraq. The legal basis of the claim changed during the

summary judgment process. After careful review, we conclude the modified claim turns on one or more essential facts that the summary judgment record simply does not address. Accordingly, we reverse the grant of summary judgment and remand.

## I.

**A. Background Facts.** We recite the record facts in the light most favorable to Dorris, the party opposing summary judgment. Dorris began working for TXD as a floor hand at rigs near Morrilton, Arkansas in early 2007. In April, Dorris received Warning Orders that he would be mobilized within six months in connection with Operation Iraqi Freedom. He notified his direct supervisors and TXD's human resources department. After receiving definite orders in early September, Dorris spoke with TXD managing partner Joe Poe, inquiring whether TXD would make up the difference in Dorris's salary while he was deployed. Poe declined, commenting that "if you're not working for me, I can't be paying you." Dorris worked for TXD until September 11, 2007, and reported for training at Fort Chaffee on October 1. He served on active duty in Iraq for approximately 12 months beginning in January 2008.

In October 2007, Dorris received a letter from TXD's benefits administrator advising that he was eligible for Continuation Coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and identifying the triggering event as "Termination of Employment." His wife called and told Dorris he had been fired. Understandably alarmed, Dorris called the TXD human resources department at its Morrilton and Dallas-Forth Worth offices. He was told in both calls that he had been "terminated for not showing up to work." Dorris requested that Poe contact him, but Poe never did. TXD did not dispute this testimony except to submit an "Exit Checklist" reciting that Dorris "Quit" on September 11.

In February 2008, while Dorris was on active duty in Iraq, TXD sold substantially all its assets to Foxxe Energy Holdings, LLC ("Foxxe"), which took

over TXD's operations without interruption. The sale contract included as an exhibit "a listing of all personnel currently employed by TXD to operate the Equipment, their job titles and descriptions, and current salaries." Article III of the contract further provided that Foxxe "will use reasonable efforts to offer employment . . . to those individuals listed" who Foxxe "determines in its sole discretion are qualified and necessary to operate and manage the Equipment." In what became the crucial issue in this lawsuit, TXD did not place Dorris's name on that list. Following the asset sale to Foxxe, TXD ceased to operate as a going concern.

Dorris returned to the United States on temporary leave in August 2008 and learned that good friends at TXD were hired by Foxxe, that Foxxe hired "all" of TXD's employees, and that no unemployment claims were asserted against TXD following the sale. The Army then wrote Foxxe a letter to make it aware of Dorris's "unsettling situation," stating that, "[h]ad there been no change of hands between organizations, SGT Dorris would have been entitled to reemployment due to wrongful termination." Dorris returned to the United States and was ready to resume work on December 15, 2008. Dorris contends he contacted both TXD and Foxxe seeking reemployment. Poe testified he was told that TXD Trucking, a separate corporate entity, offered Dorris a job and Dorris never followed up. In April 2009, Dorris was hired by Foxxe to the same position he had held at TXD.

**B. Procedural History.** Dorris filed this lawsuit in November 2010. The two-page complaint alleged that TXD "violated Plaintiff's rights under USERRA" by firing Dorris while he was deployed on active duty. The complaint cited no specific section of the USERRA statute. Prior to close of discovery, TXD moved for summary judgment, arguing that Dorris has no claim that TXD violated 38 U.S.C. § 4312(a)[1] when he was denied reemployment in December 2008, because it is

---

[1]Sections 4312 and 4313 prescribe when "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services

undisputed that TXD had been out of business for ten months and therefore "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A); see 20 C.F.R. § 1002.139(a) (citing "an intervening reduction in force" as an example of changed circumstances).

After deposing Dorris and Poe, counsel for Dorris filed a Brief opposing the motion for summary judgment. The Brief began: TXD "has not understood the claim brought by Plaintiff . . . . [H]e brings a discrimination claim under 38 U.S.C. 4311, not a failure to reinstate claim under 38 U.S.C. 4312." Dorris argued (i) he was fired in October 2007 while on active duty in Iraq, (ii) TXD's assertion that he quit was pretextual, and therefore (iii) he has a submissible claim that TXD violated USERRA's anti-discrimination provision, § 4311(a).[2] TXD's sale of assets to Foxxe cannot excuse his firing, Dorris argued. "Indeed, he was entitled to be on [the list of all personnel currently employed by TXD] so that when he returned, he would immediately receive reasonable consideration from Foxxe as a potential employee."

In response, TXD's Reply Brief argued that whether Dorris quit or was fired "is immaterial." TXD gave Foxxe a list of "current employees," and there was no

---

shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter." § 4312(a).

[2]Section 4311 is titled, "Discrimination against persons who serve in the uniformed services and acts of reprisal prohibited." Subsection (a) provides in relevant part: "(a) A person who . . . performs . . . service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that . . . performance of service." An employer is "considered to have [violated § 4311(a)] if the person's . . . service . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service . . . or obligation for service." § 4311(c)(1).

evidence TXD "ever indicated to Plaintiff that it would consider him a current or active employee for the duration of his military commitment, nor is there evidence [TXD] made this its policy with regard to similarly-situated employees having long-term military obligations." TXD submitted an affidavit by Poe averring that TXD "did not consider individuals who were absent from employment due to a long-term military commitment to be current or active employees."

After granting summary judgment on any claim that TXD violated its reemployment obligation under § 4312 (a ruling Dorris does not appeal), the district court turned to the claim that TXD violated § 4311 "by firing [Dorris] and therefore not including his name on a list of employees that was a part of the asset sale [to] Foxxe." The court acknowledged that whether Dorris was fired or quit in October 2007 was a disputed issue of fact[3] but concluded this issue did not control whether Dorris was included on the list of TXD employees provided to Foxxe:

> [W]hile Mr. Dorris was on active long-term military duty, TXD would not have considered him an active or current employee. He would not have made the list provided by TXD to Foxxe. That does not violate USERRA. See 20 C.F.R. § 1002.49 [sic; should be § 1002.149].
>
> In response to the evidence presented by TXD on this point, Mr. Dorris has not offered any evidence to show that TXD treated any similarly situated uniformed service members differently than he was treated. . . . Mr. Dorris also has not offered any evidence that TXD

---

[3]The COBRA letter, the district court noted, did not establish that Dorris was fired. USERRA requires employers to offer COBRA continuation coverage to individuals absent from employment due to service obligations, 38 U.S.C. § 4317(a)(1), and COBRA considers employees on long-term leave as "terminated," see 29 U.S.C. § 1163(2). However, Dorris's testimony regarding his telephone calls to the two TXD human resources employees was evidence he was "fired."

allowed employees on leave of absence or furlough to remain on any list of TXD's active or current employees.

Accordingly, the district court granted TXD's motion for summary judgment. Dorris appeals. We review the grant of summary judgment de novo. Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 549 (8th Cir. 2005).

## II.

Dorris argues the grant of summary judgment must be reversed because there was sufficient evidence for a reasonable jury to find that his military service was "a motivating factor" in TXD's decision to fire him in October 2007. 38 U.S.C. § 4311(c)(1). But like the district court we conclude this is a not an issue of material fact. Whether TXD regarded Dorris as fired while he was serving on active duty in Iraq did not affect TXD's legal obligations under USERRA, such as the duty to reemploy him in accordance with the terms of 38 U.S.C. §§ 4312 and 4313 upon completion of his long-term military service. See H.R. Rep. 103-65(1), at 33 (1993), reprinted in 1994 U.S.C.C.A.N. 2449, 2466 ("[A] departing serviceperson is to be placed on a statutorily-mandated military leave of absence while away from work . . . . Thus, terminating a departing serviceperson, or forcing him or her to resign . . . is of no effect."). TXD did not violate its duty to reemploy Dorris because it went out of business while he was on leave. But the pertinent issue is whether TXD violated its USERRA obligations to Dorris *while he was on leave* by not including him on the list of TXD employees provided to prospective employer Foxxe. A specific USERRA provision addresses this issue:

**§ 4316. Rights, benefits, and obligations of persons absent from employment for service in a uniformed service.**

\* \* \* \* \*

   (b)(1) Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be --
      (A) deemed to be on furlough or leave of absence while performing such service; and
      (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1); see 20 C.F.R. §§ 1002.149-1002.150.

   When an employee is on leave to perform military service, his right to benefits not determined by seniority that are guaranteed by USERRA is "not dependent on how the employer characterizes the employee's status during a period of service." 20 C.F.R. § 1002.149. Rather, § 4316(b)(1) defines the employer's general § 4311(a) duty not to discriminate against an employee on long-term military leave. It "requir[es] employers, with respect to rights and benefits not determined by seniority, to treat employees taking military leave, equally, but not preferentially, in relation to peer employees taking comparable non-military leaves generally provided under the employer's contract, policy, practice or plan." Rogers v. City of San Antonio, 392 F.3d 758, 769 (5th Cir. 2004), cert. denied, 545 U.S. 1129 (2005); accord Crews v. City of Mt. Vernon, 567 F.3d 860, 865-66 (7th Cir. 2009); Tully v. Dep't of Justice, 481 F.3d 1367, 1369-70 (Fed. Cir. 2007). This standard of equal-but-not-preferential-treatment is consistent with the Supreme Court's interpretation of a related provision of the prior statute in Monroe v. Standard Oil Co., 452 U.S. 549, 560-62 (1981); see also Sandoval v. City of Chi., 560 F.3d 703, 705 (7th Cir.), cert.

-7-

denied, 130 S. Ct. 196 (2009) ("accommodation . . . is fundamentally different from an equal-treatment norm").

Applying § 4316(b)(1)'s equal-treatment standard to this case, the first question is whether being placed on the list TXD provided to Foxxe was a "benefit[] not determined by seniority" of Dorris's employment with TXD. TXD posits that being on the list was not a benefit of employment; rather, Dorris was not eligible to be on the list because he was not a "current or active" employee at the time Foxxe took over TXD's operations. This is a fact contention, and it has some logical force. Former managing partner Poe averred that, "[i]n communications with third parties, TXD Services, LP would not include individuals serving long-term military commitments in any roster of current employees." But it is not an assertion of undisputed fact.

Sections 4311(a) and § 4316(b)(1) explicitly protect "benefits" of employment, which USERRA broadly defines as including "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2); see Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 930-31 (8th Cir. 2007) (dramatic shift in job duties); Maxfield, 427 F.3d at 552 (transfer to a job with less desirable hours). We construe the statute "broadly and in favor of its military beneficiaries." Lisdahl v. Mayo Found., 633 F.3d 712, 718 (8th Cir. 2011) (quotation omitted). Applying this broad definition to the sparse record before us, a reasonable jury could find that the opportunity for seamless transfer of employment to a successor employer was an "advantage" or "benefit" of TXD employment. Dorris presented evidence that most if not all active TXD employees were hired by Foxxe following the asset sale, permitting the inference that being on the asset sale's personnel list provided employees a meaningful advantage or benefit. There may be facts that would defeat this legal theory. But on this record, whether

Dorris was denied a benefit of employment when TXD did not include him on the asset sale list is a disputed issue of material fact. See MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 928-29 (8th Cir. 2004).

The remaining question is whether, if the list was a benefit not determined by seniority, TXD failed to comply with the mandates of § 4311(a) and § 4316(b)(1) because it denied Dorris a benefit "generally provided . . . to employees having similar seniority, status, and pay who [were] on furlough or leave of absence under a contract [or] policy . . . established while [Dorris was] perform[ing military] service." TXD submitted Poe's affidavit reciting that no employee absent because of long-term military leave was on the list. That general policy would tend to show the absence of personal animus against Dorris for being on military leave. But Poe's affidavit did not address whether TXD also excluded (or would have excluded) from the personnel list employees who were then on long-term leave *for reasons other than military service.*

This last issue is critical, yet neither party addressed it in the summary judgment record. The district court resolved the issue in TXD's favor because Dorris "has not offered any evidence that TXD allowed employees on leave of absence or furlough to remain on any list of TXD's active or current employees." In other words, the district court determined that a plaintiff claiming denial of a benefit not determined by seniority while serving on long-term military duty has both the burden of persuasion and the burden of producing evidence relevant to whether the employer treated plaintiff the same as all employees on comparable *non-military* leaves, as § 4316(b)(1) requires. But this determination reverses the statutory allocation of these burdens. As noncompliance with the specific mandates of § 4316(b) is conduct prohibited by § 4311(a), if being on the list was a benefit of employment and Dorris's military service was "a motivating factor" in his not being on the list, the burden

-9-

shifts to TXD to show that the same action would have been taken in the absence of military service, *i.e*, that anyone similarly on furlough or leave of absence would have been left off the list. See § 4311(c)(1); Maxfield, 427 F.3d at 551.

In this case, USERRA's purposes, § 4311(c)(1), and the fact that relevant evidence is far more accessible to the employer warrant placing on TXD the burden of establishing compliance with § 4311(a) and § 4316(b)(1) if Jonathan Dorris was denied a benefit not determined by seniority when he was left off the employee list provided to Foxxe. Cf. NLRB v. Mastro Plastics Corp., 354 F.2d 170, 176-77 (2d Cir. 1965), cert. denied, 384 U.S. 972 (1966). For these reasons, the grant of summary judgment is reversed only as to this specific USERRA claim.

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____